```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS

RICHARD CARL VEGA,            )
a/k/a Ricardo Mazzarino,      )
     Plaintiff,               )
                              )
          v.                  )
                              )    CIVIL ACTION NO. 16-12237-PBS
                              )
COMMONWEALTH OF MASSACHUSETTS,)
     Defendant.               )
```

**MEMORANDUM AND ORDER**
November 22, 2016

SARIS, C.D.J.

### I. INTRODUCTION

On November 3, 2016, plaintiff Richard Carl Vega, a/k/a Ricardo Mazzarino ("Vega"), a civil committee in custody at the Massachusetts Treatment Center ("MTC") in Bridgewater, Massachusetts, filed a self-prepared complaint against the Commonwealth of Massachusetts. He challenges his criminal convictions for rape with respect to criminal cases tried in the Suffolk County Superior Court. See Commonwealth v. Vega, SUCR1987-066623, SUCR1989-076886-A and SUCR1989-076886-B. In addition, Vega seeks to appeal the September 28, 2016 decision by the Massachusetts Supreme Judicial Court ("SJC") denying his petition for Further Appellate Review ("FAR")and request for a new trial, alleging that the SJC violated his constitutional rights.

Briefly, the background is as follows.[1]  In November, 1990,

---

[1] The background is culled out from Commonwealth v. Vega, 88 Mass. App. Ct. 1112 (2015); Commonwealth v. Vega, 74 Mass. App. Ct. 1108 (2009); and Commonwealth v. Vega, 36 Mass. App. Ct., 634 N.E.2d 149 (1994).

Vega was convicted after a jury trial, of three counts of rape arising from three distinct acts of vaginal and anal rape of an elderly woman. In 1994, his convictions were affirmed on appeal. Thereafter, Vega filed numerous *pro se* motions, including two motions for a new trial. The first motion was filed in 2000 and was denied. His subsequent appeal was dismissed for procedural reasons. Five years later, in 2005, Vega filed a second motion seeking release. That motion was denied and the denial was affirmed on appeal because Vega's claims were waived by his failure to raise them on direct appeal or in his first motion for a new trial, and the court concluded that Vega had not shown a substantial risk of a miscarriage of justice. Vega's non-waived claims were disposed of in the direct appeal. On May 13, 2013, Vega filed a third motion for a new trial, which was denied by the trial judge. On appeal, the denial was affirmed.

On March 22, 2016, Vega filed a motion with the SJC to file a FAR application late, along with a motion for appointment of counsel and a Notice of Appeal. Commonwealth v. Vega, FAR-24218. Two months later, on May 23, 2016, he filed a second motion to file a FAR application late. A month after that, on June 28, 2016, he filed a third motion to file FAR application late and a motion for limited briefs. Id. Two months after that, on August 26, 2016, Vega filed his FAR application. On September 28, 2016, the SJC denied Vega's FAR application.

Weeks after the SCJ denial of his FAR application, on October 11, 2016, Vega filed a letter to the SJC regarding his

notice of appeal along with a request to the SJC to assemble the record for the United States District Court.  SJC docket sheet (Docket No. 1-1 at 3).  On October 25, 2016, the SJC Clerk sent a letter to Vega advising that the SJC office had received his notice of appeal from the denial of his FAR application, and further advising that the SJC does not assemble the record for federal courts on FAR denial applications.  Letter (Docket No. 1-1 at 1).

In this action (filed a week after the Clerk's letter), Vega asserts the same or similar arguments raised in his prior motions for a new trial.  These arguments include, *inter alia*, that his due process rights were violated because: (1) exculpatory evidence of polygraph tests in 1987 and 1988 were not admitted into evidence at trial and the jury was not notified of these tests; (2) exculpatory evidence of the polygraph tests were not provided to his second defense counsel; (3) he was subject to double jeopardy because the Commonwealth did not indict him within 30 days after his arrest on August 13, 1987, but waited two years before secretly bringing two new indictments against him in March, 1989 based on the same single event and same victim of rape and did not disclose the two indictments until the first day of Vega's trial; (4) he was sentenced unlawfully to consecutive terms of incarceration to 19.5 to 20 years on each indictment, rather than concurrent terms, with 20 years probation from on or after, despite the fact that the indictments arose out

of the same event;[2] (5) the government sought to "blackmail" him into a plea bargain and later filed separate indictments for the same offense because Vega would not accept a plea bargain; (6) DNA evidence was used to convict him notwithstanding that the government's DNA experts admitted to presenting evidence of false positives, erred in the test results, and admitted that the favor of the doubt about the test results was given to the government rather than to Vega because the government had commissioned and paid for the tests, and because future contracts with the state were expected; (7) the trial court erred in not conducting a voir dire of the jury to ensure they were attentive during the DNA evidence, since one of the jurors was sleeping through the testimony; (8) he had ineffective assistance of several of his attorneys in connection with the withholding of the favorable polygraph results, the failure to object or seek a mistrial when DNA evidence of Vega's pants was shown not to be a match to the victim, and the failure to alert the court regarding the government's misconduct with respect to plea negotiations.

As relief, Vega seeks judgment against the SJC, reversal of his criminal convictions, and a new trial.

---

[2] Vega's criminal status is not entirely clear. According to the records of the MTC, Vega is listed under the name Ricardo Mazzarino. Those records indicate that Vega completed the incarcerative portion of his criminal sentence but remains subject to ten (10) years of probation in connection with SUCR1987-06662 (notably a different case number than those cited by Vega in his complaint). The MTC records further reflect that on March 20, 2008, Vega was civilly committed to the MTC for one day to life. See SUCV 2008-00906. Vega alleges in his complaint, however, that he received an incarcerative sentence followed by twenty (20) years probation.

of the same event;[2] (5) the government sought to "blackmail" him into a plea bargain and later filed separate indictments for the same offense because Vega would not accept a plea bargain; (6) DNA evidence was used to convict him notwithstanding that the government's DNA experts admitted to presenting evidence of false positives, erred in the test results, and admitted that the favor of the doubt about the test results was given to the government rather than to Vega because the government had commissioned and paid for the tests, and because future contracts with the state were expected; (7) the trial court erred in not conducting a voir dire of the jury to ensure they were attentive during the DNA evidence, since one of the jurors was sleeping through the testimony; (8) he had ineffective assistance of several of his attorneys in connection with the withholding of the favorable polygraph results, the failure to object or seek a mistrial when DNA evidence of Vega's pants was shown not to be a match to the victim, and the failure to alert the court regarding the government's misconduct with respect to plea negotiations.

As relief, Vega seeks judgment against the SJC, reversal of his criminal convictions, and a new trial.

---

[2] Vega's criminal status is not entirely clear. According to the records of the MTC, Vega is listed under the name Ricardo Mazzarino. Those records indicate that Vega completed the incarcerative portion of his criminal sentence but remains subject to ten (10) years of probation in connection with SUCR1987-06662 (notably a different case number than those cited by Vega in his complaint). The MTC records further reflect that on March 20, 2008, Vega was civilly committed to the MTC for one day to life. See SUCV 2008-00906. Vega alleges in his complaint, however, that he received an incarcerative sentence followed by twenty (20) years probation.

Along with the complaint, Vega filed a Motion for Leave to Proceed *in forma pauperis* (Docket No. 2), a Motion to Appoint Counsel (Docket No. 3), and a Motion for Habeas Corpus *ad Testificandum* for Oral Arguments and Evidentiary Hearing (Docket No. 4).

## II.   DISCUSSION

A.   <u>The Motion for Leave to Proceed *In Forma Pauperis*</u>

As an initial matter, while Vega's custodial status is not entirely clear, based on the MTC records noted herein, the Court considers, for the purposes of determining eligibility to proceed *in forma pauperis*, that Vega's current custody is that of a "civil committee" and not a "prisoner" within the meaning of 28 U.S.C. § 1915(h)(defining a prisoner as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.").  In light of this, the Prison Litigation Reform Act's ("PLRA") requirement that prisoners must pay the filing fee of the Court for civil actions ($350.00) (pursuant to the formula set forth in 28 U.S.C. § 1915(b)), does not apply.  Thus, Vega is eligible for a complete waiver of the filing and administrative fees ($400.00).  After a review of Vega's financial affidavit and MTC account statement, the Court finds that he lacks sufficient funds to pay the filing and administrative fees.

Accordingly, Vega's Motion for Leave to Proceed *in forma*

*pauperis* (Docket No. 2) is ALLOWED.

B.   Screening of the Complaint

Because Vega has been permitted to proceed *in forma pauperis*, his complaint is subject to screening under 28 U.S.C. § 1915(e)(2).  This statute authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action is malicious, frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2).  A lawsuit may be frivolous where there is "no possible ground upon which a reasoned argument can be made to sustain [] jurisdiction."  Cohen v. Corrections Corp. of America, 439 Fed. Appx. 489, 492 (6th Cir. 2011)(alteration in original) (quoting De La Garza v. De La Garza, 91 Fed. Appx. 508, 508 (7th Cir. 2004)).

In addition to the statutory screening of a complaint, a court always has an obligation to inquire *sua sponte* into its own jurisdiction.  See McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Because Vega is proceeding *pro se*, this Court liberally construes the complaint.  Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972).  Even under a liberal construction, however, there are a number of legal impediments that warrant dismissal of this action *sua sponte*, for the reasons

6

set forth below.

C.  <u>Vega May Not Challenge His Criminal Convictions in a Civil (Non-Habeas) Action</u>

Vega's requested relief goes to the heart of his state criminal convictions; however, he may not proceed with his challenges to his conviction and sentence in a civil, non-habeas action.  It is well settled that a state prisoner (or state civil committee) who seeks relief from a conviction or sentence (or other state judgment of incarceration), may not proceed by a civil action pursuant to 42 U.S.C. § 1983 to redress alleged due process violations; rather, he or she must proceed, if eligible to do so, through a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  <u>Allen v. McCurry</u>, 449 U.S. 90, 104-05 (1980)("Through § 1983, the 42d Congress intended to afford an opportunity for legal and equitable relief in a federal court for certain types of injuries.  It is difficult to believe that the drafters of that Act considered it a substitute for a federal writ of habeas corpus, the purpose of which is not to redress civil injury, but to release the applicant from unlawful physical confinement, <u>Preiser v. Rodriquez</u>, 411 U.S.[475 (1973)], at 484 ....");  <u>see</u> <u>Diaz v. Grondolsky</u>, No. CA 13-11341-NMG, 2013 WL 3892894, at *4 (D. Mass. 2013)("[A]s a general matter, habeas corpus proceedings are the proper mechanism for challenging the 'legality or duration' of confinement.  By contrast, a non-habeas civil action is the proper method of challenging conditions of confinement." citing <u>Preiser</u>, 411 U.S. at 484-99)).  Notably, Vega is aware of the habeas process insofar as he previously

7

filed a § 2254 petition in this Court in connection with one of the Suffolk Superior Court cases that is the subject of this complaint.  See Vega v. DuBois, Civil Action No. 95-10566-GAO (challenging Commonwealth v. Vega, SUCR 066623).[3]

D.  **The Court Lacks Jurisdiction Under The Rooker-Feldman Doctrine to Review SJC Decisions**

Next, as part of his complaint, Vega seeks to appeal the decision of the SJC denying his FAR and to have this Court reverse the SJC decision.  Under the Rooker-Feldman doctrine, this Court lacks jurisdiction over Vega's appeal.  The Rooker-Feldman doctrine is a distillation of two Supreme Court decisions: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  The doctrine precludes a federal action if the relief requested in that action would effectively reverse a state court decision or void its holding or if the plaintiff's claims are "inextricably intertwined" with the state court's decision.  See Johnson v. De Grandy, 512 U.S. 997, 1005-1006 (1994); Coggeshall v. Mass. Bd. of Reg'n of Psychologists, 604 F.3d 658, 663 (1st

---

[3] In that action, Judge Zobel found Vega's § 2254 habeas petition to be defective.  In his petition, Vega alleged double jeopardy violations, ineffective assistance of counsel at trial, and insufficient evidence at trial.  Judge Zobel found that the face of the petition failed to demonstrate any claims for habeas relief because he had procedurally defaulted on his claims of double jeopardy, gender-biased jury, and ineffective assistance of counsel by failing to raise them on appeal, and because he failed to provide the factual basis of his insufficient evidence claim.  She directed him to file an amended petition curing the defects.  The case later was reassigned to Judge O'Toole.  He found that Vega's amended petition did not cure the defects noted by Judge Zobel and the action was dismissed on October 18, 1995.  Vega's motion for reconsideration was denied on January 5, 1996.

Cir. 2010) citing Exxon Mobil Corp. v. Saudi Basic Industries Corp., Inc., 544 U.S. 280, 291 (2005)(doctrine applies to cases by state court losers seeking review and rejection of state court judgments rendered prior to commencement of federal suit).

In Exxon, the Supreme Court expressed concern that lower courts occasionally have attempted to extend Rooker-Feldman far beyond its contours, abrogating federal court jurisdiction granted by Congress to be concurrent with the jurisdiction of state courts. Id. at 283. Vega's action, which essentially is a repackaging of his state court post-conviction motions, appeals and FAR review, however, is precisely the type of case designed to fit within the narrow confines of the Rooker-Feldman doctrine. The doctrine applies only to: (1) a party who lost in a state-court judgment that (2) was rendered before the federal action commenced, where (3) the party complains of injuries caused by the state-court judgment and (4) invites district court review and rejection of those judgments. See Silva v. Massachusetts, 351 Fed. Appx. 450, 454 (1st Cir. 2009)(presenting the elements in a different order). It is beyond dispute that Vega lost in state court and that the state court proceeding was final before he filed this action. The First Circuit has held that "when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, then without a doubt the state court proceedings have 'ended.'" Id. at 455. Thus, this Court is without jurisdiction to review the SJC judgment or any state court judgments. See

<u>Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico</u>, 410 F.3d 17, 24 (1st Cir. 2005).

Here, Vega does not present independent claims; rather, his claims are directly and inextricably tied to the state court judgments themselves. In light of this, this action must be dismissed *sua sponte*.

E.   <u>Filing of a Habeas Petition</u>

The clerk is directed to send to Vega the standard § 2254 petition form for completion in the event Vega elects to file a habeas petition.

The Court makes no findings as to whether Vega meets the "in custody" requirements for habeas relief, whether any habeas petition would be barred by the one-year limitations period pursuant to 28 U.S.C. § 2244(d)(1)(A)-(D), or whether any habeas petition would be barred as a second or successive § 2254 petition. <u>See</u> 28 U.S.C. § 2244(b)-(d). Vega may address those issues in conjunction with any habeas petition and those matters are reserved for the judicial officer assigned.

Should Vega decide to file a habeas petition, he must complete the standard § 2254 form, naming the proper respondent. He also must pay the $5.00 filing fee or file an application for a waiver thereof by filing an *in forma pauperis* motion along with his certified prison account statement demonstrating that he lacks sufficient funds in his account to pay the $5.00 fee.[4]

---

[4]   At this time, Vega's MTC account statement indicates that he has in excess of $32.00.

Although he has been permitted to proceed *in forma pauperis* in this action, the filing fee determinations are different, and therefore he must re-submit a waiver request. The clerk also shall send Vega the standard application form.

F.   The Pending Motions

In light of the dismissal of this action for the reasons set forth herein, Vega's Motion to Appoint Counsel (Docket No. 3), and his Motion for Habeas Corpus *Ad Testificandum* for Oral Arguments and Evidentiary Hearing (Docket No. 4) are DENIED as moot.

### III. CONCLUSION

Based on the foregoing, it is hereby ordered that:

1. Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) is ALLOWED;

2. Plaintiff's Motion to Appoint Counsel (Docket No. 3) is DENIED;

3. Plaintiff's Motion for Habeas Corpus *Ad Testificandum* for Oral Arguments and Evidentiary Hearing (Docket No. 4) is DENIED;

4. This action is DISMISSED *sua sponte*; and

5. The clerk shall send plaintiff the standard § 2254 petition form and the standard Application to Proceed Without Prepayment of Fees and Affidavit in the event plaintiff seeks to file a § 2254 habeas petition.

**SO ORDERED.**

/s/ Patti B. Saris
CHIEF, UNITED STATES DISTRICT JUDGE